UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>HOKU CORPORATION,<br><br>        Debtor.<br><br>R. SAM HOPKINS, Chapter 7 Trustee,<br><br>        Plaintiff,<br><br>        v.<br><br>DARRYL NAKAMOTO, an individual; JEREMY XIAOMING YIN, an individual; JERROD SHRECK, an individual; and SCOTT PAUL, an individual; TAO (MIKE) ZHANG, an individual; DEAN HIRATA, an individual; KARL STAHLKOPF, an individual; YI ZHENG, an individual, and JANE AND JOHN DOES 1-10, individuals; and TIANWEI NEW ENERGY HOLDINGS CO., LTD, a People's Republic of China corporation,<br><br>        Defendants. | Case No. 4:15-cv-475-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

By general order, this adversary proceeding was previously referred to this

**MEMORANDUM DECISION & ORDER - 1**

district's bankruptcy court. The defendants now move the Court to withdraw the reference. Defendants Scott Paul, Dean Hirata, Karl Stahlkopf, Darryl Nakamoto, and Jerrod Schreck filed one motion (Dkt. 1); Defendants Jeremy Yin, Tao Zhang, and Yi Zheng filed another (Dkt. 2); and Defendant Tianwei New Energy Holdings Co., Ltd. filed a third (Dkt. 3). For the reasons discussed below, the Court will grant the motions to withdraw the reference, but will delay withdrawal until the bankruptcy court certifies that the claims asserted against the individual defendants are ready for trial.

## BACKGROUND

This proceeding arises from the planned construction of a polysilicon manufacturing plant in Pocatello, Idaho. Defendants say that in 2007, Hoku Corporation, began working with its wholly owned subsidiary, Hoku Materials, Inc., to construct the plant.

The construction project was funded with bank loans. Defendant Tianwei New Energy Holdings Co., Ltd. provided stand-by letters of credit for the loans. Additionally, some companies pre-purchased polysilicon, which provided funding for the project. Ultimately, the project was not completed. The market for polysilicon crashed; construction costs escalated; financing ceased; and efforts to restructure failed. In July 2013, Hoku Materials and Hoku Corporation filed separate bankruptcy cases.

In the summer of 2015 – roughly two years after these bankruptcy cases were filed – Hoku Corporation's Chapter 7 Trustee initiated roughly 175 adversary proceedings against various contractors and suppliers involved in the construction. These contractors and suppliers had previously received full or partial payment for goods and services

delivered. The Trustee contends that these payments constitute fraudulent transfers. He is seeking to have these monies returned to Hoku Corporation's bankruptcy estate.

Additionally, the Trustee filed this adversary proceeding, which is substantively different from the contractor/supplier proceedings just described. In this case, the Trustee targets two types of defendants: (1) individual defendants, who allegedly served as officers and directors of Hoku Corporation; and (2) a corporate defendant, Tianwei. The Trustee's central allegation is that the individual defendants breached their fiduciary duties to Hoku and essentially drove the company into bankruptcy. The Trustee also contends that corporate defendant Tianwei controlled the appointment of Hoku's directors and is therefore responsible for the individuals' alleged breaches of duty. All defendants contend that this matter should be litigated in district court, rather than in bankruptcy court.

## THE STANDARD

Federal district courts have original jurisdiction over cases arising under the Bankruptcy Code. 28 U.S.C. § 1334(a). This Court has exercised its authority under 28 U.S.C. § 157(a) to refer all bankruptcy matters to the district's bankruptcy judges. *See Apr. 24, 1995 Third Amended General Order.* Nevertheless, under 28 U.S.C. § 157(d), this reference is subject to mandatory or permissive withdrawal, depending on the circumstances. *See* 28 U.S.C. § 157(d). Section 157(d) reads as follows:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and

other laws of the United States regulating organizations or activities affecting interstate commerce.

District courts have discretion to determine whether the moving party has shown sufficient cause to justify granting a motion to withdraw the reference. *In re Cinematronics, Inc.*, 916 F.2d at 1451. In assessing whether "cause" exists, district courts have traditionally began the analysis by determining whether a claim is "core" or "non-core," "since it is upon this issue that questions of efficiency and uniformity will turn." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).

To oversimplify, "core" claims depend on bankruptcy law for their existence, while non-core claims do not. *See, e.g., Stern v. Marshall*, 131 S. Ct. 2594, 2611-15 (2011); *Dunmore v. United States*, 358 F.3d 1107, 1114 (9th Cir. 2004) (claims are non-core if "they do not depend on [the] Bankruptcy Code for their existence and they could proceed in another court"); *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997). Bankruptcy courts "may enter appropriate orders and judgments" in core proceedings. 28 U.S.C. § 157(b)(1). In non-core proceedings, the bankruptcy court may not finally adjudicate claims; rather it proposes findings of fact and conclusions of law to the district court for de novo review. 28 U.S.C. § 157(c)(1).

After *Stern v. Marshall,* 131 S. Ct. 2594 S. Ct. 2594, 2608 (2011), the core/non-core distinction does not always figure as prominently in the analysis. *See id* (holding that the bankruptcy court did not have constitutional authority to determine a claim that was statutorily defined as "core"). Rather, post-*Stern,* the more relevant question is whether the bankruptcy court has the constitutional authority to enter final judgment on

the claim at issue.  *See, e.g., Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 467 B.R. 712, 719 (S.D.N.Y. 2012) (collecting cases and explaining that "[a]fter Stern, the core/non-core distinction may or may not remain relevant to a district court's withdrawal of the reference 'for cause'").

Once a district court has decided whether the bankruptcy court is empowered to finally determine a claim, it should next consider "the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms*, 124 F.3d at 1008 (citing *In re Orion Pictures Corp.*, 4 F.3d at 1101). Where non-core issues predominate (i.e., claims the bankruptcy court cannot finally determine), withdrawal may promote efficiency because a single proceeding in the district court could avoid unnecessary costs implicated by the district court's de novo review of non-core bankruptcy determinations.  *Id.* at 1008-09.

Finally, the presence of a jury demand may constitute cause for withdrawal of the reference. The Ninth Circuit has concluded that "bankruptcy courts cannot conduct jury trials on non-core matters, where the parties have not consented."  *In re Cinematronics*, Inc., 916 F.2d 1444, 1451 (9th Cir. 1990); *see also* 28 U.S.C. § 157(e).[1]  Nevertheless, the demand for a jury trial does not necessitate immediate withdrawal of the reference. *Sigma Micro Corp. v. Healthcentral.com*, 504 F.3d 775, 787-88 (9th Cir. 2007).

---

[1] "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the trial if specifically designated to exercise such jurisdiction by the district court and *with the express consent of all the parties*." (emphasis added).

MEMORANDUM DECISION & ORDER - 5

ANALYSIS

1.      **The Nature of the Claims**

The Trustee alleges four substantive claims for relief, all of which stem from the alleged misconduct of Hoku's former officers and directors.[2]

   **A. The Claims Against the Individuals**

The first three claims target the individual defendants. In the first claim, the Trustee alleges that during the three years before Hoku Corporation filed bankruptcy, the individual defendants breached their "duty of loyalty" by taking actions that "further deepened [Hoku] Corporation's insolvency" including causing the company to incur significant debt and approving excessive expenditures. *See Adversary Compl.* ¶ 79. In the second claim, the Trustee charges the individual defendants with "corporate waste," based upon their approval of payments to law firms and other entities associated with the attempted restructuring of Hoku Corporation's financial affairs. In the third claim, captioned "Breach of Fiduciary Duties for Individual Benefit," the Trustee alleges that the individual defendants approved payments to themselves, which allegedly "put the interests of the individual Defendants over those of the Corporation and its creditors." *Id.* ¶ 92.

The Court concludes that these three claims are non-core. They are based purely

---

[2] The Trustee also alleges a fifth "claim" for attorneys' fees. The Court will not analyze the request for attorneys' fees as a separate "claim," because such requests may be made within the prayer for relief. *See* Fed. R. Bankr. P. 7008, Advisory Comm. Note (The notes to the 2014 amendment explain that it is no longer necessary to plead a separate claim for attorneys' fees because such a practice "differed from the practice under the Federal Rules of Civil Procedure, [and] had the potential to serve as a trap for the unwary.").

on state law and the Trustee has not meaningfully challenged the defendants' assertions that they are entitled to a jury trial on the claims asserted. Thus, if these claims proceed to trial, an Article III judge will preside.

### B.  The Claim Against Tianwei

The claim against Tianwei, by contrast, is a core claim, which the bankruptcy court may finally adjudicate. The claim is styled as one for breach of fiduciary duty, but the sole remedy sought is that Tianwei's claim against Hoku Corporation's estate be equitably subordinated to other creditors' claims. Numerous courts have concluded that equitable subordination claims are core. *See, e.g, In re Sys. Eng'g & Energy Mgmt. Associates, Inc.,* 252 B.R. 635, 650 (Bankr. E.D. Va. 2000) ("Virtually all courts that have considered the nature of equitable subordination claims under § 510 of the Bankruptcy Code have concluded such actions are core proceedings.") (citing cases).

Tianwei says that in characterizing this claim – and in making the larger decision of whether to withdraw the reference – the Court should not examine the adversary proceeding as it now exists, but should instead anticipate how the proceeding might look if defendants choose to assert counterclaims and cross-claims. *See Tianwei Reply Br.*, Dkt. 9, at 3 ("this Adversary involves numerous defendants, some of which may maintain counterclaims or, more importantly, cross-claims impacting the bankruptcy court's authority and jurisdiction"); *Paul et al. Reply Br.*, Dkt. 11, at 7 ("Given that Tianwei raised the specter of cross-claims, the Court should consider the likelihood that some or all of the other defendants may also have grounds to state cross-claims against

**MEMORANDUM DECISION & ORDER - 7**

Tianwei."). Tianwei also says the Court may not even have "related to" jurisdiction[3] of some of these potential cross-claims. *See Tianwei Mtn. Mem.*, Dkt. 9, at 5; *Paul Reply Br.*, Dkt. 11, at 7 (contending that a *Tianwei* cross-claim would present the purest form of a 'Stern v. Marshall' situation in that it would arise under state law between two private parties").

The problem with this argument is that it is premature. At this point, the defendants have not chosen which cross-claims or counterclaims they will pursue. Further, Tianwei says only that it *may* assert such claims. Under these circumstances, the Court believes the better course is to evaluate the adversary proceeding as it currently exists – not as it might exist. And, for the reasons already discussed, the Court finds that the claim asserted against Tianwei is a core claim, which the bankruptcy court may finally adjudicate.

To sum up, then, three of the four substantive claims in this adversary proceeding are non-core claims that cannot be finally adjudicated in bankruptcy court without the parties' consent. Further, the one claim that can be finally adjudicated in bankruptcy court (the claim against Tianwei) – is supported by the same facts that support the non-core claims. So on balance, the first factor weighs in favor of withdrawing the reference. As will be explained, however, the Court concludes that the better course is to delay any

---

[3] Under 28 U.S.C. § 1334(b), "district courts . . . have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or *related to* cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). A case is "related to" a bankruptcy case if the outcome of that case "could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate. *Fietz v. Great W. Savings*, 852 F.2d 455, 457 (9th Cir. 1988) (adopting the Third Circuit's test, as laid out in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984)).

withdrawal until the non-core claims are ready for trial.

**2.     Judicial Economy**

The judicial-economy factor weighs in favor of leaving this matter in bankruptcy court for pretrial proceedings.  The bankruptcy court has been presiding over the Hoku Corporation bankruptcy case since July 2013.  That court is thus more familiar with the debtor and with the underlying bankruptcy proceedings.  Further, the claims asserted in this relatively factually complex lawsuit deal with Hoku's financial situation.  The bankruptcy court will undoubtedly familiarize itself with Hoku's general financial condition, and some of the circumstances that led it to file for bankruptcy protection, either in presiding over the bankruptcy case in chief, or in presiding over the pretrial proceedings in the 175 adversary proceedings currently pending in this bankruptcy.

Some of the defendants suggest that this Court – not the bankruptcy court – has an informational advantage regarding Hoku's financial situation.  These defendants point out that in December 2014, this Court dismissed the complaint in *JH Kelly v. Tianwei New Energy Holdings Co., Ltd.*, Case No. 4:13-cv-368-BLW (D. Idaho).

The plaintiff in that case, JH Kelly, LLC, was the general contractor for the polysilicon manufacturing plant.  When funding dried up and construction was ceased, JH Kelly was owed more than $25 million.  JH Kelly sued Tianwei and several of Tianwei's officers and directors for fraud and racketeering in its efforts to recover these funds.  The Court dismissed these claims and entered judgment on the case in December 2014.  The case is now on appeal to the Ninth Circuit.

The Court is not convinced that dismissing the *JH Kelly* complaint nearly a year

ago places it on an equal footing with the bankruptcy court in terms of familiarity with any facts relevant to this litigation. Most significantly, the *JH Kelly* case has been mostly silent for nearly a year. The bankruptcy court, on the other hand, has a fresh, active bankruptcy on its docket. As institutional memories go, the bankruptcy court has the advantage. Further, although conducting pretrial proceedings in one court, and then moving to another for trial, will obviously cause some inefficiencies, there is a possibility that this case will settle before trial.

3. **Delay and Costs to the Parties**

In terms of delay and costs to the parties, the Court believes that the bankruptcy court will be able to move this case through pretrial proceedings more quickly than this Court could. As already noted, the bankruptcy court has expended significant time and effort over the past two years becoming familiar with the underlying bankruptcy proceeding. That knowledge will almost surely enable the bankruptcy court to move this case along quickly.

Granted, there will be some delays and increased costs to the parties if this this Court is required to conduct a de novo review of proposed findings and conclusions on dispositive motions. But these possible costs and delays do not overcome the weight this Court has placed on the familiarity the bankruptcy court has with the debtor and the debtor's relatively complicated financial situation.

4. **Uniformity of Bankruptcy Administration**

The uniformity factor also weighs in favor of leaving this matter in bankruptcy court for pretrial proceedings. The bankruptcy court is presiding in a uniform manner

over roughly 175 adversary proceedings in Hoku Corporation's bankruptcy. Although this adversary proceeding is factually distinct from the contractor/supplier proceedings, it nevertheless makes sense for all the Hoku adversary proceedings to move along in a uniform manner, to the extent possible. There is no doubt that the bankruptcy court is in the best position to monitor the progress of all these litigations, and to ensure a uniform, efficient administration of the bankruptcy estate and the various adversary proceedings.

5.   **Prevention of Forum Shopping**

Lastly, regarding the forum-shopping factor, the Court is unpersuaded by the Trustee's naked assertion that the defendants have engaged in forum shopping. This factor is therefore neutral.

## CONCLUSION

After having considered the factors identified above, the Court concludes that withdrawal is not warranted at this time. The Court will instead leave this matter in bankruptcy court for pretrial proceedings. When pretrial proceedings are concluded, and the bankruptcy court certifies that the claims asserted against the individual defendants are ready for trial, the Court will withdraw the reference of this entire adversary proceeding.

The parties should be aware that the Court believes the bankruptcy court will ultimately be in the best position to decide the claim asserted against Tianwei. The complication, however, is that if this Court denied Tianwei's motion to withdraw the reference at this time, then the bankruptcy court might theoretically be asked to decide disputed facts underlying the claims asserted against the individuals before such facts

could be decided by a jury. Given these sorts of concerns, the Court believes – at this time, at least – that all claims asserted in this adversary proceeding should travel together, both during and after pretrial proceedings. Depending on how the record develops, however, the Court may later be persuaded to refer the claim against Tianwei back to bankruptcy court for final adjudication.

## ORDER

For all the foregoing reasons, **IT IS ORDERED that:**

1) The Motions to Withdraw (Dkts. 1, 2, and 3 ) are granted in part, and denied in part, as follows:

2) The motions are **GRANTED** to the extent defendants seek a withdrawal when the bankruptcy court certifies that the claims asserted against the individual defendants are ready for jury trial.

3) The motions are **DENIED** to the extent defendants seek an immediate withdrawal.

4) The bankruptcy court will preside over all pretrial matters in this proceeding, including discovery and pretrial conferences, and will resolve routine and dispositive motions. If any party files a dispositive motion, the bankruptcy court will entertain such a motion and submit proposed findings of fact, conclusions of law, and a recommendation for disposition to this Court.

5) If and when it becomes clear that a jury trial of the claims asserted against the individuals will be necessary, and those claims are prepared and ready for trial

to begin, the bankruptcy court shall so certify to this Court and the reference of this entire adversary proceeding will be withdrawn at that time.

6) Until the bankruptcy court certifies that the claims asserted against the individuals are ready for trial, the parties shall file all motions, pleadings, and other papers in the adversary proceeding in bankruptcy court.

DATED: November 18, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court